### GORDON LUBRICATING CO. v. LEWIS et al.
### No. 203–F.

United States District Court
N. D. West Virginia, Fairmont Division.
Dec. 8, 1949.

Steptoe & Johnson and James M. Guiher, of Clarksburg, W. Va., for plaintiff.

L. T. Eddy and George M. Amos, Jr., of Fairmont, W. Va., for defendants.

WATKINS, District Judge.

Plaintiff seeks to recover the sum of $3,012.69 for oil products and other materials furnished by plaintiff to defendants, under a dealer's sales agreement. Defendants do not dispute the account, except as to one item of $170.30 involving an increase of five cents per gallon on motor oil. However, defendants have filed counterclaims in the aggregate amount of $19,168.65, claiming violations by the plaintiff of the dealer's sales agreement. The case was tried by the court in lieu of a jury.

■ There is clearly no merit in defendant's claim that they were overcharged the sum of $170.30. The price list which was made a part of the dealer's sales agreement specifically provided that prices were "subject to change without notice". A changed price list effective September 15, 1946 was delivered to and received without protest or objection by defendants. Oils were thereafter shipped, and defendants were billed, and commissions paid at the increased prices without objection or protest. No question was ever raised by defendants until after the institution of this suit. Defendants thereby agreed to pay for the products in accord with the increased price list.

■ The second defense or counterclaim relates to an advance made by defendants in the amount of $100 to one Stanford, an employe of plaintiff. There is likewise no merit in this claim. It is crystal clear that this was no more than a personal loan made to Stanford by defendants to help pay his doctor's bills and hotel expenses, Stanford then being ill in the hotel. Without reviewing the evidence, it is quite apparent that plaintiff did not promise or agree to repay this personal loan. This makes it unnecessary to decide whether there was any consideration for such a promise to pay the debt of another.

The third counterclaim is based upon the right of defendants under their dealer's sales agreement, as modified, to commissions made within the territory (eleven counties in West Virginia) allotted and set apart to them in the contract, except as to sales made by Arthur P. Schreiber during the period of the contract. The original written contract does not use the word "exclusive", and no rights were reserved therein to permit Schreiber to make sales in such counties, but it is clear that both matters were discussed and agreed upon. From the evidence, I find that the understanding and agreement between the parties was that, except as to Schreiber's rights, the eleven counties were to be exclusively defendants' territory while the sales agreement remained in effect. Before the sales agreement was terminated, plaintiff made two sales direct to Jenkins Oil Company in this territory, the first shipment being for $3,306 and the second for $1,045.91. Schreiber did not make these sales and there is no evidence to show that he ever claimed or was ever paid any commissions on them. All Schreiber did was to inform Jenkins Oil Company that Stanford was

the railroad lubrication man of Gordon Lubricating Company, and there the matter ended so far as Schreiber was concerned.

Furthermore, it is significant that Jenkins then resold all of the second shipment and a part of the first shipment within the specified territory, the exact amount of the first shipment resold by Jenkins not being shown by the evidence. I find that defendants were entitled to their commission upon these two sales of $609.87.

The fourth counterclaim is based upon the contention that Gordon promised the defendants he would turn over to them all of the Schreiber business, and take Schreiber out of the territory completely, when defendants felt they had sufficient experience and finances to handle a regular distributorship in the eleven counties mentioned in the agreement of July 16, 1946. Schreiber had been with plaintiff a number of years and had built up a large business in this territory, his sales being far in excess of defendants' during the entire period the defendants operated as a consignment distributor. For example, Schreiber had sales of $15,852.73 during the period from July 16, 1946, the date of defendants' agreement until October 31, 1946, a few days before the cancellation, whereas the defendants' gross sales in the same period were $1,301.67. Defendants seek to recover $15,688.51 on this counterclaim, "less expenses". They arrive at this figure by computing what they say would be 20% commission on Schreiber's "assumed" average—gross sales for a period of two years, from November 1, 1946, to the date of institution of this action.

The fifth counterclaim is based upon the contention that plaintiff wrongfully cancelled the sales agreement of July 16, 1946, by letter dated November 5, 1946. The written agreement provided that "this agreement may be terminated by either party upon thirty days' notice". Plaintiff obtained its oil products from a California company with a similar provision in its contract for cancellation. Defendants contend that after the written agreement was made, they went to plaintiff and obtained an agreement that so long as R. M. Gordon was in charge of the business, there would be no cancellation, if defendants cared to continue to handle the products. Defendants claim $2,309.84 as damages for sales it could have made between the date of cancellation and the date this suit was instituted.

The fourth and fifth counterclaims aggregate approximately $18,000. The alleged acts upon which these counterclaims are based occurred in October and November, 1946. In November, 1946, defendants tried to get plaintiff to withdraw its cancellation, but this request was promptly refused, and these claims were never asserted until after the institution of this action in November, 1948.

A detailed discussion of the conflicting oral evidence as to the terms of this agreement would serve no useful purpose. I have heard the testimony of the various witnesses, considered their credibility, and weighed the relative value of the conflicting evidence. I find that the defendants have failed in their proof of both the fourth and fifth counterclaims. They have likewise failed to prove damages under either counterclaim with sufficient accuracy to meet the requirements laid down by the courts.

The plaintiffs are entitled to recover from the defendants the full amount of their claim, less the $609.87, with accrued interest on the difference.